**Thomas WALKER, Plaintiff,**

v.

**TIME LIFE FILMS, INC., David Susskind, Gill Champion, Martin Richards and Heywood Gould, Defendants.**

**No. 83 Civ. 6755 (DNE).**

United States District Court,
S.D. New York.

Aug. 14, 1985.

Jimmie L. Engram, New York City, of counsel, for plaintiff.

Patterson, Belknap, Webb & Tyler, New York City (Eugene L. Girden, Blair Axel and Dietrich Snell, New York City, of counsel), for defendants.

EDELSTEIN, District Judge:

This is an action for copyright infringement, misappropriation, breach of a confidential and fiduciary relationship and un-

fair competition, brought by plaintiff, Thomas Walker ("Walker"), author of the book *Fort Apache*. Plaintiff alleges that defendant, Time Life Films, Inc. ("Time Life"), and various persons engaged by Time Life to write, produce and direct the film "Fort Apache, The Bronx," illegally used plaintiff's original ideas and expression in making the film.

This court has jurisdiction over the copyright infringement claim under 28 U.S.C. § 1338(a) and (b). Plaintiff also invokes this court's pendent jurisdiction over his state law claims of breach of confidence, misappropriation, unfair competition and deceptive trade practices. Defendants have moved for summary judgment on all claims. The motion is granted.

## FACTUAL BACKGROUND

On June 25, 1980, Walker, a former police officer employed by the New York City Police Department, filed a complaint in New York State Supreme Court. Defendants in this action were Time Life, the producers of the film "Fort Apache, the Bronx," David Susskind, Gill Champion, and Martin Richards and the screenwriter, Heywood Gould. The complaint alleged copyright infringement, unfair competition, breach of a fiduciary and confidential relationship and violation of the common law copyright. The state action was dismissed on the ground that, pursuant to 28 U.S.C. § 1338, federal courts have original and exclusive jurisdiction of any civil action arising under any act of Congress relating to copyright. As to the balance of plaintiff's claims, the state court ruled that the state law claims of unfair competition and breach of a fiduciary and confidential relationship are simply "redundant and equivalent" to the copyright claim and were asserted for the purpose of avoiding federal preemption. Thus, the state court dismissed the claim in its entirety for lack of subject matter jurisdiction.

On September 14, 1983, Walker filed a complaint in this court against the same defendants. The complaint alleges copyright infringement, pursuant to 17 U.S.C. § 301, violation of the Lanham Act, 15 U.S.C. § 1125(a), unfair competition, deceptive trade practices and breach of a fiduciary and confidential relationship. The common law copyright action was not included in the federal court action. Defendants have moved for summary judgment.

The undisputed facts are as follows.[1] Walker was employed as a lieutenant and captain for the New York City Police Department assigned to the 41st precinct in the Bronx. The precinct is commonly known as Fort Apache due to the high incidence of arson and other crimes within it. In 1976, the Thomas Y. Crowell Company published a book written by the plaintiff and entitled *Fort Apache*. On February 23, 1977, New York Magazine printed a cover story on plaintiff's book *Fort Apache*. Prior to the book's publication, defendant Heywood Gould entered into a contractual agreement with defendants Martin Richards and Gill Champion to write a screenplay based on police activities in the South Bronx. In March of 1974, a screenplay, entitled "Fort Apache, The Bronx," was filed by Gill Champion with the copyright office in the District of Columbia and given copyright # 90013. On February 6, 1981, Time Life released the motion picture "Fort Apache, the Bronx," based on the screenplay by Heywood Gould.

The disputed issues of fact include the origin of the idea for defendants' film and the similarity of themes, characters and episodes in the book and the film. Defendants have conceded access to the unpublished manuscript for the purpose of this motion.

Walker asserts that in late 1971 or early 1972, Heywood Gould visited the 41st Precinct and identified himself as a newspaper reporter investigating the arson problem in

---

1. This information was provided for the court in the statements submitted by the parties pursuant to Rule 3(g) of the civil rules of the U.S. District Courts for the Southern and Eastern Districts of New York.

the area. Walker claims he offered to show Gould a copy of his manuscript, provided Gould would not take notes. Gould allegedly agreed to this condition; however, Walker claims that when he returned later, he caught Gould taking notes. A few weeks after Gould's visit, Walker claims the manuscript disappeared from his locker in the station house.

The defendants contend that Gould never met Walker and did not visit the precinct until after publication of the book. Defendants claim that the idea for the film originated in the late 1960's or early 1970's, when Mel Richards and Gill Champion saw a news report of a gruesome crime that occurred in the South Bronx. They began to research the background of the South Bronx with its escalating crime rate and made preparations for a dramatization of police activity in the area.

The book *Fort Apache* is an autobiographical account of Walker's experiences as a policeman patrolling the streets of the 41st precinct. The book's organization is topical. Chapters center on youth gang violence, poor officer morale and attacks on officers. Stylistically, the book reads more like a daily journal than a tightly interwoven and plotted dramatic account. The title Fort Apache is not Walker's independent creation; it has been commonly used to refer to the territory covered by the 41st Precinct since the late 1960's.

Time Life's screen production is a dramatic fictional account of a police officer's romantic involvement with a drug-addicted nurse and the search for the killer of two 41st Precinct police officers. Although the film uses reports of some actual crimes that occurred in the South Bronx as source material, the film is predominantly a fictional work. The main character in the film, Murphy, unlike Walker, is a divorced, disillusioned patrolman, who is contemptuous of authority.

Although plaintiff contends that a factual dispute exists as to whether the works are substantially similar, defendants contend that no reasonable observer could find substantial similarity between the two works. After viewing the final screen version of the film and the book as published in 1976, this court holds that no reasonable observer could find substantial similarity. Any similarity that may exist is either trivial, abstract or non-protectible as a matter of law.

## DISCUSSION

*1. The Copyright Infringement Claim.*

### A. AMENABILITY TO SUMMARY JUDGMENT.

A series of copyright cases in this District have found noninfringement as a matter of law on a motion for summary judgment, either because the similar elements of the two works are non-copyrightable, or because no substantial similarity exists between the two works. *E.g. Warner Bros. v. American Broadcasting Companies,* 720 F.2d 231, 240 (2d Cir.1983); *Smith v. Weinstein,* 578 F.Supp. 1297, 1302 (S.D.N. Y.), *aff'd. mem.,* 738 F.2d 410 (2d Cir.1984).

### B. COURT'S EXAMINATION OF THE WORKS.

In determining copyright infringement, the works themselves supersede and control contrary allegations and conclusions, or descriptions of the works as contained in the pleadings. *Davis v. United Artists, Inc.,* 547 F.Supp. 722, 724 (S.D.N. Y.1982). The Court considers the works as they were presented to the public. *Id.* Plaintiff requests the court to compare the two works on the basis of lists of random similarities and on earlier scripts of the screenplay.[2] Affidavit of Samuel Rosenburg, Exhibit 1, November 16, 1984. This

---

**2.** This court has not considered plaintiff's voiced over analysis of the film's first scenes. The plaintiff claims that Rule 1006 of the Federal Rules of Evidence authorizes the court to consider a shortened and edited version of the film. Plaintiff has misapplied Rule 1006 which only

allows summaries and charts in abbreviated form for trial. The rule seeks to avoid distorting material from its general context. In determining substantial similarity, the court must only consider the works in their entirety and final form as presented to the public.

request is denied. Courts have routinely rejected requests to consider earlier drafts of the screenplay. Consideration of earlier versions of the screenplay is too unreliable in determining substantial similarity. *Huie v. National Broadcasting Company*, 184 F.Supp. 198, 199 (S.D.N.Y.1960). *See also Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985) (rejection of list method of comparing works for substantial similarity, because it is "inherently subjective and unreliable.").

It is also unnecessary to discuss every alleged similarity in the two works; a brief discussion of the salient portions of plaintiff's argument is illustrative and sufficient. *Zambito v. Paramount Pictures*, 613 F.Supp. 1107, 1111 (E.D.N.Y.1985).

## C. THE MERITS.

■ In a copyright infringement action, the plaintiff must prove copying by the defendant. *See* M. Nimmer, *The Law of Copyright*, 7809 ¶ 7 141 (1976). Evidence of access and substantial similarity are in themselves sufficient to create an inference of copying. *Warner Bros. v. American Broadcasting Company*, 654 F.2d 204, 207 (2d Cir.1980).

## I. NON–PROTECTIBLE MATERIAL.

■ Assuming, *arguendo*, that plaintiff can prove substantial similarity, copyright protection does not extend to historical or contemporary facts, material traceable to common sources or in the public domain, and *scenes a faire*. Many of the alleged similarities between Walker's book and the film fall into one of these categories.

### a. FACTUAL INFORMATION.

■ Factual information is in the public domain and hence not protectible. *See Werlin v. Reader's Digest Ass'n. Inc.*, 528

F.Supp. 451, 462 (S.D.N.Y.1981); *Rosemont Enterprises, Inc., v. Random House, Inc.*, 366 F.2d 303, 309 (2d Cir.1966), *cert. denied*, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). There is no copyright protection extended to the presentation of facts or in their selection. *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 978 (2d Cir.), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980).

Although creation of a non-fiction work, even a compilation of pure fact, entails originality, the police reports of the 41st precinct are not independent creations of Walker's imagination entitled to copyright protection. *Harper and Row Publishers v. Nation Enterprises*, —— U.S. ——, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985). Walker concedes that the events narrated in the book are true and that only the names were changed to respect the privacy of the individuals. T. Walker, *Fort Apache*, (1976) (copyright page), Deposition of T. Walker, July 17, 1980 at 10. The policemen's responses to the aftermath of crimes and attempted criminal acts are facts logged in police records, and are not protected by federal copyright statutes.[3] As the court concluded in *Alexander v. Haley*, 460 F.Supp. 40, 45 (S.D.N.Y.1978), "where common sources exist for the alleged similarities, or the material that is similar is otherwise not original with the plaintiff, there is no infringement."

■ In *Smith v. Weinstein, supra*, 578 F.Supp. at 1303, the film "Stir Crazy," was based on a prison rodeo, and thus did not infringe copyrightable elements of the book by the same name. The court concluded that no copying was possible because the rodeo was placed in the public domain by extensive news treatment. Similarly, in this case, the high rate of crime and violence in the burned-out blocks of the South Bronx received extensive news coverage in both print and on television. The

---

**3.** The rationale underlying the scope of copyright protection afforded in the Second Circuit is best explained in *Hoehling v. Universal City Studios, Inc., supra*, 618 F.2d at 972. The Court reasoned that although the plots of the two works being compared by the courts were nec-

essarily similar, there was no infringement because to forbid copying of historical facts and contemporary events would "interfere with the federal policy of allowing free access to copy whatever the federal patent and copyright laws leave in the public domain." *Id.* at 978.

subject matter was fair game for any artist. The crimes outlined by Walker were newsworthy events in the public domain and not entitled to copyright protection.

### b. SCENES A FAIRE.

Similarly, *scenes a faire*—incidents, characters or settings which, as a practical matter, are indispensable or standard in the treatment of a given topic—are not protected. *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). In any account based on experiences in a poverty stricken, crime-ridden environment, depictions of bribery, prostitution, purse-snatching and neighborhood hostility to law enforcers are inevitable. Plaintiff contends that similar accounts in the film and book describe the disarming of threatening individuals, and the poor morale of disgruntled officers. *See* Affidavit of Samuel Rosenburg in Opposition to Defendants's Motion for Summary Judgment. These incidents are stock material for most police stories. Affidavit of George Stade, at 4–6 Plaintiff's claims of copying based on the portrayal of these events is without merit.

### II. COPYRIGHTABLE MATERIAL.

██ Even as to the copyrightable elements, the court finds that no reasonable observer could conclude that the book and the film are substantially similar.[4]

### a. TEST FOR DETERMINING SUBSTANTIAL SIMILARITY.

The standard test for determining substantial similarity is whether an "average lay observer would recognize the alleged copyrighted work as having been appropriated from the [original] copyrighted work," *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966); however, this test has been qualified in this Circuit. In *Warner Bros v. American Broadcasting Company*, *supra*, 720 F.2d at 245, the court stated that the test of substantial similarity for determining infringement is not a concept familiar to the public at large. Rather than using the reasonable observer test, substantial similarity is a "term to be used in a courtroom to strike a delicate balance between the protection to which authors are entitled under an act of Congress and the freedom that exists for all others to create their works outside the area protected against infringement." *Id.*

██ There are two criteria for determining substantial similarity: proving "literal," or "word for word," similarity in certain instances of the work, or finding infringement of the work's "fundamental essence" or structure. *Werlin v. Reader's Digest Ass'n. Inc.*, *supra*, 528 F.Supp. at 462.

### b. ALLEGATIONS OF LITERAL SIMILARITY.

██ Plaintiff indirectly alleges both forms of similarity. In support of his claim of literal similarity, plaintiff contends that Murphy's statement in the film "better than the movies" copies Walker's statement "better than a double feature at the R.K.O. Fordham." Plaintiff's Statement Pursuant to Rule 3(g), Exhibit 1. This claim of similarity is too vague and general. Further, plaintiff contends that Murphy's line in an earlier scripted version of the film, "we're here to keep the lid on a garbage can ...," which was not included in the film, explicitly copies Walker's statement that "rumors ... rattle through the area like a careening garbage can lid." T. Walker, *Fort Apache*, at 67, (1976). However, the court need consider only the final version of the film as presented to the viewing public. *Davis v. United Artists, Inc.*, *supra*, 547 F.Supp. at 724 n. 9. Plaintiff also contends that Murphy's statement to an arrested man, "you'll be out on the street in an hour," copies Walker's phrase "out in few minutes."[5] This and other

---

**4.** Plaintiff has referred to issues which are appropriate for a jury to decide. However, it should be noted that plaintiff failed to demand a jury.

**5.** Plaintiff does not cite a page number, and the

alleged similarities are not material to the copied work and, even if they were material, they are too strained, far-fetched and abstract to be of consequence. Comparison of the film and book reveals no basis for this claim of literal or word-for-word similarity.

### c. ALLEGATIONS OF SIMILARITY OF FUNDAMENTAL ESSENCE.

Plaintiff finds support for his substantial similarity claim from three newspaper articles which cite Walker as the source for the film: *The Daily News*, November 15, 1981, "Romanticizing Real Life Stories", Lorenzo Carcaterra, *The Pompano Ledger*, Ed Foley, and *The Pompano Beach Rotary Bulletin*, March 14, 1981. Because the subject matter of the Pompano newspaper articles concerns Doctor Goldenkrantz's [6] visit to the Pompano Beach Rotary Club, plaintiff's assertions lack merit. Further, Carcaterra, the reporter for *The Daily News*, has conceded that he did not read Walker's book. Affidavit of Thomas Walker, February 1, 1985. Plaintiff then contends that a group entitled the Union Patriotia Puertoriquena also finds the book and film to be substantially similar. Affidavit of Thomas Walker, January 25, 1985. However, the Second Circuit in *Warner Bros. v. American Broadcasting Company supra*, 720 F.2d at 245, concluded that a few opinions cannot enlarge the scope of statutory protection enjoyed by a copyrighted property.

### d. PROTECTION OF EXPRESSION OF IDEAS.

The similarity to be assessed must concern the expression of ideas, not simply the ideas themselves. 17 U.S.C. § 102(b). To analyze similarity in expression, courts must compare the following elements of the two works: the analysis and interpretation of events, the structuring of material and marshaling of facts, the choice of words, and the emphasis given to a particular development. *Werlin v. Reader's Di-*

*gest Ass'n. Inc., supra*, 528 F.Supp. at 461–62.

Although the two works at issue are both based on police activities in the 41st precinct of the South Bronx, the structure of the two works and the authors' use of the factual information are clearly divergent. Plaintiff's book has no central plot or organizing scheme; the book reads more like a policeman's diary of daily events than a unified literary creation with interdependent characters and stereotypes. In the later chapters, Walker organizes the patrolmen's experiences topically; chapters concentrate on youth gang violence, the officers' psychological instabilities, and attacks on the station house. Unlike the book, the film's narrative is centered on Murphy's relationship with a drug-addicted nurse and the related murder of two fellow officers of the 41st precinct. All of the characters are interrelated; coincidentally, the nurse's drug dealer killed both the nurse and the psychopathic prostitute. Although both the film and book include the murder of two policemen, the book mentions the crime only briefly. Even if the producers of the film had given the murder similar treatment and emphasis, the event was based on an actual crime and thus not entitled to copyright protection. *Alexander v. Haley, supra*, 460 F.Supp. at 44–45. In contrast, the murder of the policemen in the film was a central motif. Many of the scenes in the film related to the murder, including the prostitute's subsequent attacks on unsuspecting male victims, the resulting round-up of innocent civilians and the neighborhood attacks on the station house. Walker's work was unoriginal, as it failed to present a combination of ideas that could develop into a distinctive and protected creation by an interplay of characters and narratives. The plaintiff has not persuaded this court that a similarity of protected expression between the two works exists.

This court rejects plaintiff's claimed similarities between the prologue, the begin-

---

court cannot find the quote in the book.

**6.** Dr. Goldenkrantz is the doctor who delivered Walker at birth.

ning of the book and the first scenes of the film. Affidavit of Thomas Walker in Opposition to Defendant's Motion for Summary Judgment, November 12, 1984. Walker's affidavit claims that the murder of two policemen, a futile chase scene, and a stolen wig, which all predominate in the book's beginning, are copied in the film. After viewing the film, this court cannot find substantial similarity. The film begins with the prostitute's brutal shooting of two Fort Apache officers, a transvestite's threat to kill himself and the arresting officer's visit to the hospital. The only reference to a wig in the film is the transvestite's concern with his appearance. The murder alluded to in the novel was based on the actual shootings of Joseph Piagintini and Waverly Jones, a news event. Affidavit of Eugene Girden, Exhibit S at 20, October 19, 1984. No reasonable observer could possibly find substantial similarity of protected material between the beginning of the film and book.

### e. TRIVIAL, IMMATERIAL AND INSUBSTANTIAL ALLEGATIONS.

Many of plaintiff's allegations of copying refer to incidents which are trivial, immaterial or insubstantial. For example, plaintiff contends that Murphy's recommendation to Corelli, his partner, to read either Dick Tracy or the Yellow Pages illustrates that the filmmakers copied Sargeant Bartow's suggestion that Sargeant Grit, a fellow officer in the 41st precinct, read the *The Blue Knight*. *See* Exhibit 6 of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment. Further, Walker contends that the book's description of the lack of safe parking and the inadequate protection from vandals was copied in the film. These allegations, even if true, are trivial, insubstantial, and insufficient to prove substantial similarity of protectible material.

### f. CHARACTER COMPARISON.

■ Plaintiff's expert, Samuel Rosenburg, has submitted an affidavit which claims that the film's leading characters are substantially similar to the protaganists in Walker's book. Exhibit 6 of Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, November 12, 1984 Based on this affidavit, plaintiff contends that the Walker character is split into two characters in the film: Captain Connolly (Edward Asner) and Officer Murphy (Paul Newman). The plaintiff suggests that the dual role played by Walker "did not go unnoticed by the makers of the film." *Id.*[7] A comparative character analysis of the book and film illustrates both the absurdity of this argument and the lack of merit in the analogy. The characters in the film bear no similarity to the book's protaganists. The only identifiable similarity is their role as policemen in the same precinct. This Court takes judicial notice that members of the New York Police Department are often portrayed as Irish, smokers, drinkers, and third or fourth generation police officers. The assertion that defendants wrongfully appropriated any expression of plaintiff's characters and ideas is rejected. *See Giangrasso v. Central Broadcastion Company Inc.*, 534 F.Supp. 472, 478 (E.D.N.Y.1982).

The differences between Murphy and Walker are far greater than the abstract similarities asserted by plaintiff. Whereas Murphy is hostile, contemptuous of authority and lacks ambition, Walker is a disciplinarian who respects his commanding officers and is actively climbing the bureaucratic ladder. Walker is a new arrival and leaves the precinct at the conclusion of the book when he is transferred. In contrast, Murphy, an 18-year veteran of the 41st precinct, considers resigning; however, the end of the film implies that Murphy will stay in the precinct. Another divergence is the marital status of the two characters. Murphy is divorced, and his relationship with the emergency room nurse is a central element in the film's plot. In contrast, Walker is happily married.

There is almost no similarity between Walker and Captain Connolly (Edward Asbers.

---

**7.** This document does not contain page num-

ner), aside from their positions of authority. Lt. Walker is relegated to patrolling the streets, and the Captain's responsibilities are based at the station house. In Plaintiff's Sur Reply Memorandum, he alleges that Lt. Walker and Captain Connolly (Asner) bear similar facial resemblances. This allegation is meritless because a finding of similarity by the ordinary reasonable observer is impossible; the reader of Walker's book is not presented with a clear picture of the author's physical appearance. The book traces the waning of Walker's naive idealism and, by the conclusion, he is realistically assessing the dim prospects for improving the crime-ridden area. In contrast, Captain Connolly's idealism is unaltered; this reflects the great differences that underlie the characters in the film and the novel.

There are no characters in the book equivalent to Murphy, Connolly, Morgan, Finley,[8] the track star, the nurse, the drug dealer, the prostitute, the South Bronx People's Party and Corelli's fiance. Affidavit of Eugene Girden, Exhibit 5.

These divergences clearly surpass and outweigh any abstract similarities that may inevitably be found in works centered on New York City policemen patrolling a crime-ridden area.

In *Durham Industries Inc. v. Tomy Corp., supra,* 630 F.2d 905 at 913 (2nd Cir.1980), the Second Circuit assessed the problems of the relative value to be given to some similarities: "as a matter of logic as well as law, the more numerous the differences between the two works, the less likely it is that they will create the same aesthetic impact so that one will appear to have been appropriated from the other." In determining infringement, if the points of dissimilarity not only exceed the remaining examples of similarity, but indicate that these slight similarities are of minimal importance either quantitatively or qualitatively, then there is no infringement. 3 M. Nimmer, *supra,* ¶ 13.03[b], at 13–37.

That is the case here. Accordingly, the copyright infringement claim is dismissed.

### 2. The Lanham Act Claim.

 Plaintiff's fourth cause of action alleges a violation of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits false designation of origin or title. The Lanham Act provides: "Any person who shall ... use in connection with any goods ... false description or representation ... falsely to describe or represent same ... shall be liable to a civil action by any person who believes that he is or is likely to be damaged by the use of any such false description or representation." To prove a violation of the Lanham Act, two elements must be shown: (1) the infringed work must acquire a secondary meaning so that the public identifies it with the plaintiff and his work and (2) similar titles must spawn public confusion and the misconception that plaintiff either originated, sponsored, or is associated with defendant's work. In considering the second element, the Second Circuit in *B and L Sales Associated v. H. Daroff and Sons, Inc.,* 421 F.2d 352, 353–54 (2d Cir.), *cert. denied,* 398 U.S. 952, 90 S.Ct. 1873, 26 L.Ed.2d 292 (1970) concluded that although likelihood of confusion is frequently a fairly disputed issue of fact on which reasonable minds may differ, the issue is amenable to summary judgment in appropriate cases. As with claims of copyright infringement, courts retain the authority to monitor the outer limits of substantial similarity within which to determine whether there is a likelihood of confusion as to the source. Otherwise, the scope of protection a work enjoys would be expanded beyond what Congress prescribed. *Warner Bros. v. American Broadcasting Companies, supra,* 720 F.2d at 246.

 Courts in the Second Circuit have determined that "absence of similarity leaves little basis for asserting a likelihood of confusion" in violation of the Lanham Act. *Warner Bros. v. American Broad-*

---

**8.** Morgan and Finley, police officers in the 41st precinct, threw a teenager off the roof of an apartment building.

*casting Companies, supra,* 720 F.2d at 246, (quoting *Durham Industries Inc., v. Tomy Corp., supra,* 630 F.2d at 918). However, lack of substantial similarity is not a blanket reason for dismissal of a Lanham Act claim. If the second comer falsely represents his good as that of the trademark owner, a violation has occurred. A claim of 'passing off' or 'palming off' may be established even if the goods are not confusingly similar. The wrong lies in the misrepresentation of a common source. *Id.* at 247.

Walker claims that Time Life's Variety advertisement misrepresents the film as deriving from the book *Fort Apache.* The advertisement however, simply announces the beginning of photography for the film. No reasonable observer could infer that the film derived from the book based on the advertisement.

■ This court also rejects plaintiff's contention of public confusion; plaintiff presents three isolated newspaper articles which credit Walker as the author of both the book and the film. *See supra,* at 436–437. These examples alone do not illustrate popular misconception and are insufficient to prove that the public has come to identify the title with plaintiff and his work. This is particularly true when the title refers to a geographical location that is not the plaintiff's independent creation. *See* Pre-Trial Order ¶ 5. Accordingly, Walker's Lanham Act claim is dismissed.

### 3. The State Law Claims.

### A. JURISDICTION.

Dismissal of plaintiff's federal claims raises the question of whether the state law claims of misappropriation, unfair competition and trade practices, and breach of a confidential and fiduciary relationship should be dismissed without prejudice to their commencement in state court. This court has jurisdiction over the pendent claims under *United Mine Worker's of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The state court dismissed all the common law claims,

finding that they are "simply redundant and equivalent" to plaintiff's copyright claim and are based on the same facts. *Walker v. Time Life Films Inc.,* No. 8938/80, slip op. at 4 (N.Y.Sup.Ct.1983). Although the Second Circuit has indicated that "... if the federal claims could be disposed of on summary judgment under Fed.R.Civ.P. 56, the court should refrain from exercising pendent jurisdiction, absent exceptional circumstances," *Kavit v. A.L. Stamm and Co.,* 491 F.2d 1176, 1180 (2d Cir.1974), in this particular fact situation, exceptional circumstances exist. The state court already had an opportunity to adjudicate the issue. Thus, by deciding the state law claims, this court is not usurping the state court's role in deciding the state law claims.

### B. BREACH OF A CONFIDENTIAL AND FIDUCIARY RELATIONSHIP.

■ Plaintiff's first cause of action alleges that defendant Heywood Gould, the screenwriter, abused a fiduciary or confidential relationship with plaintiff in obtaining access to the appropriated material. Actionable claims for breach of confidential and fiduciary relationships are centered on breach of an agreement between parties, or breach of trust they place in each other because of the nature of their relationship. *Smith v. Weinstein, supra,* 578 F.Supp. at 1307. Although plaintiff alleges that Heywood Gould, the screenwriter, read and took notes from an earlier manuscript, plaintiff has not submitted sufficient support showing that a confidential or fiduciary relationship existed between Walker and Gould. Furthermore, the cases cited by the plaintiff do not support his claim of a confidential relationship. In *Harper & Row Publishers, Inc. v. Nation Enterprises,* 501 F.Supp. 848, (S.D.N.Y.1980), *aff'd.,* 723 F.2d 195 (2d Cir.1983), *rev'd on other grounds,* — U.S. —, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985), the claims asserted were copyright infringement, conversion and interference with a contract; no claim for breach of a confidential relationship was presented. Further, the facts in *Smith v. Weinstein, supra,* 578 F.Supp. at

1297, are clearly distinguishable because Smith (the writer) and Weinstein's (the producer) relationship consisted of close personal and professional contacts, as Weinstein read Smith's scripts and directed them to film producers.

## C. MISAPPROPRIATION AND UNFAIR COMPETITION.

■ Walker claims that Time Life is liable under New York tort law for misappropriation of his book's content, ideas, and concepts. However, plaintiff's exclusive remedy for his state law claims that rely on the misappropriation allegations of the unfair competition claim is 17 U.S.C. § 301(a). Congress' purpose was clearly expressed: "[t]he intention of Section 301 is to preempt and abolish any rights under the common law or state statutes, that are equivalent to copyright and that extend to works within the Federal Copyright Law." H.R.Rep. No. 1476, 94th Cong., 2d Sess. at 130, *reprinted in* 1976 U.S.Code Cong. & Ad.News, 5659, 5746. The state cause of action only protects rights which are qualitatively different from the rights protected by the Copyright Act. *Harper & Row Publishers Inc. v. Nation Enterprises, supra*, 501 F.Supp. at 850. To the extent that plaintiff's unfair competition claim seeks protection against copying, it is also based on a right equivalent to rights within the scope of the Act and defeated by 17 U.S.C. § 301(a). *Warner Bros. v. American Broadcasting Companies, supra*, 720 F.2d at 247. Plaintiff's claim of unfair competition is a thinly veiled attempt to achieve what he failed to accomplish by asserting his copyright infringement claim. *Durham Industries Inc. v. Tomy Corp., supra*, 630 F.2d at 918.

## D. DECEPTIVE TRADE PRACTICES.

■ Plaintiff claims that Time Life confused and misled the trade and public and induced the mistaken belief that the film is associated with plaintiff's book. Complaint ¶ 40. Plaintiff contends that Time Life's advertisement in Variety on February 15, 1976 illustrates Time Life's attempt to market a similar product and steal profits. This assertion alone is insufficient for any reasonable trier of fact to find that the trade and public were confused and misled. Plaintiff himself admits that his book was well publicized even before the Variety advertisement appeared. *See* Affidavit of Thomas Walker, at 9. Walker even appeared on the cover of New York Magazine and on television and radio promotional spots. Moreover, the Variety advertisement makes no reference to Walker's book; it simply states that principal photography was to begin in May of 1976. Plaintiff's Memorandum in Opposition, Exhibit 1, November 16, 1984. Although plaintiff's book and defendant's film refer to the same area of the South Bronx, plaintiff's use of the title Fort Apache is not sufficient to state a cause of action of unfair competition. Plaintiff concedes that the name Fort Apache predates his book, having been used since the late 1960's to refer to the 41st precinct in the South Bronx. *See* Pretrial Order ¶ 5, Deposition of Thomas Walker, July 17, 1980 at 184. Plaintiff does not show that the defendant makes any allusion to being affiliated, connected or associated with the plaintiff; thus plaintiff's claims of unfair competition and deceptive trade practices are summarily dismissed.

Plaintiff's seventh cause of action asserts that defendant's film dissipated and destroyed the value of plaintiff's dramatic rights, irreparably and irretrievably, by injuring and damaging his prospective profits. This claim approximates the misappropriation claim and is predicated on plaintiff's premise that there is substantial similarity between the two works. Because the misappropriation claim fails, there can be no relief for this claim. Further, upon this court's conclusion that there is no substantial similarity and only some similarity of nonprotectible and trivial material, this claim must be dismissed, because the works are fundamentally different. This precludes the plaintiff from arguing that the defendant stole the value of his future rights to a dramatic reproduction of *Fort Apache*. Pre-trial Order ¶ 5.

## CONCLUSION

Defendants' motion for summary judgment is granted in all respects. The clerk shall enter judgment in favor of defendants.

SO ORDERED.