**Lori MADRID, Plaintiff,**

**v.**

**CHRONICLE BOOKS, Pixar, a/k/a Pixar Talking Pictures, and Buena Vista Motion Group a/k/a Disney, and John Does (1–10) and John Roes (1–10), Defendants.**

**No. 01–CV–185–B.**

United States District Court,
D. Wyoming.

June 27, 2002.

Beth Mary Bollinger, Spokane, WA, Robert R. Rose, III, Bagley, Karpan, Rose and White, Cheyenne, WY, for Plaintiff.

Bruce Salzburg, Freudenthal, Salzburg & Bonds, Cheyenne, WY, Anthony T. Falzone, McCutchen, Doyle, Brown & Enersen, San Francisco, CA, for Chronicle Books.

Terry Mackey, Hickey, Mackey, Evans & Walker, Cheyenne, WY, Steven A. Marenburg, Irell & Manella, Los Angeles, CA, Kennedy & Christopher, Denver, CO, for Pixar and Buena Vista Motion Group.

Paul Cooper, Cooper & Clough, Denver, CO, for Thomas J. Flower, D.O.

Judith A. Studer, Schwartz, Bon, Walker & Studer, Casper, WY, for Kay Thomas, RN and Ellen E. Barbour.

### ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

This case arises from Plaintiff's claim that Defendants misappropriated her work and used it in the development of a full-length feature film. The case is now before the Court on the Defendants' Motions for Summary Judgment. After reading the briefs, hearing oral argument, and being fully advised of the premises, the Court **FINDS** and **ORDERS** as follows:

### Statement of Parties and Jurisdiction

Plaintiff Lori Madrid is a resident of Torrington, Wyoming. Defendant Chronicle Books ("Chronicle") is a limited liability corporation organized and existing under the laws of California with its principal place of business in San Francisco, California. Chronicle is a publisher known for its high quality art books. Defendant Pixar a/k/a Pixar Animation Studios and Defendant Pixar Talking Pictures (collectively "Pixar") are California corporations with their principal places of business in Emeryville, California. Pixar combines creative and technical artistry to create original stories in the medium of computer animation. Defendant Walt Disney Pictures and Television d/b/a Buena Vista Motion Pictures Group ("Disney") is a California corporation with its principal place of business in Burbank, California. In May of 1991, Pixar entered into the Feature Film Agreement with Walt Disney Pictures for the development and production of up to three computer animated feature films to be marketed and distributed by Disney. In February 1997, Pixar entered into a Co-Production Agreement with Disney which superseded the Feature Film Agreement, under which Defendants made the movie, "Monsters, Inc.," at issue in this case.

### Background

Plaintiff is a social worker and children's short story writer. Among the stories she has written is a one-page manuscript entitled "There's a Boy in My Closet," (the "poem") which Plaintiff authored in the fall of 1999. The poem is an alternate reality tale of seven stanzas and twenty-eight lines, where a little boy turns up in a land of monsters who are afraid of human children. Due to its brevity, it may be set forth in full:

"There's a BOY in my closet," The little monster said. His mommy shook her head at him And said, "go back to bed." "There's no such thing as little boys— I've told you that before. Now go climb back into your bed And close your closet door."

"But, mom, I SWEAR I saw him! My vision wasn't blurry, And he looked really really weird Because he wasn't furry! I'm not sure what he's covered with. I think it might be skin. And he's not big and fat like me—He's bony and he's thin.

He's got some freckles on his face. Instead of horns there's hair. Geez, mom, if you just take a look I know you'll get a scare!

I haven't heard him roar like us, But he almost made me cry Because he looked right up at me And I heard him say 'hi,' That's why I ran back down here!" She said, "son I love you so, But there's no such thing as little boys. Now back to bed you go!"

Plaintiff sent her manuscript to Defendant Chronicle on October 27, 1999 to be considered for publication. Plaintiff never received a response from Chronicle, nor did Chronicle return her poem in the self addressed envelope that Plaintiff provided. Plaintiff has since adapted her story for a local musical production.

Sometime in early September, 2001, Plaintiff learned through some acquaintances that video advertisements for a movie entitled "Monsters, Inc.," a children's film released by Defendants Disney and Pixar in November of 2001, looked substantially similar to the story of her poem and subsequent musical. Through research, Plaintiff discovered that Chronicle is the publisher of a book, "The Art of Monsters, Inc.," that collects the concept art of the movie "Monsters, Inc." to provide a behind-the-scenes look at the creation process.

Plaintiff now alleges that her poem was substantially reproduced in the movie "Monsters, Inc." The movie's release date was November 2, 2001. The "teaser" for the film at Pixar's website (*www.pixar.com*) described the movie:

> There's a reason why there are monsters in children's closets-it's their job. Monsters, Inc. is the largest and most successful scream processing factory in the monster world, and there's no better Scarer to get the job done than James P. Sullivan. But when Sulley accidentally lets a human girl into Monstropolis, life turns upside down for him and his green, one-eyed buddy, Mike.

*www.pixar.com/featurefilms/inc/tale.html* (last accessed June 14, 2002).

Plaintiff contends that Chronicle gave Pixar/Disney access to her story idea and Pixar/Disney appropriated it as the basis for the movie Monsters, Inc. Plaintiff states that despite the fact Pixar/Disney has its own publishing wing, Hyperion Books—Pixar/Disney used Chronicle to publish "The Art of Monsters, Inc.," and by this, Plaintiff intimates that this is Chronicle's reward for giving Pixar/Disney the idea for Pixar/Disney's new blockbuster.

Plaintiff maintains that Defendants' actions constitute copyright infringement. Plaintiff also claims she was denied proper attribution of authorship, which is prohibited under the Lanham Act. 15 U.S.C. §§ 1117, 1125(a). Plaintiff moved this Court for a preliminary injunction on Monsters, Inc., and a hearing was held in the matter on November 1, 2001. The Court denied Plaintiff's request, as the Court found: it was unlikely that Plaintiff would succeed on the merits of her claim; that Plaintiff would not suffer irreparable harm; that the injury to Defendants far outweighed any injury to Plaintiff; and that the great weight of the public interest

was in favor of the timely release of the movie. Based on at least six independent reasons, Defendants now move this Court for summary judgment on Plaintiff's claims. Defendants allege: prior independent creation; uncopyrightable subject matter; no tangible expression; unoriginal subject matter; no substantial similarity; and no access. Plaintiff responded by filing a motion pursuant to Fed.R.Civ.P. 56(f) to either dismiss Defendants' summary judgment motions as prematurely filed, or in the alternative, to continue the hearing on the matter until after discovery is complete.

### *Discussion*
### *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jenkins v. Wood,* 81 F.3d 988, 990 (10th Cir.1996) (quoting Fed.R.Civ.P. 56(c)). The court views the evidence in the light most favorable to the party opposing summary judgment. *Jenkins,* 81 F.3d at 990.

The party moving for summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the nonmoving party's claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to establish the existence of an essential element of the claims on which they bear the burden of proof at trial. *Id.* And "[w]hile the movant bears the burden of showing the absence of a genuine issue of material fact, the movant need not negate the nonmovant's claim." *Jenkins,* 81 F.3d at 990.

To satisfy this burden, the nonmoving party must go beyond the pleadings and designate specific facts to make a showing that there is a genuine issue for trial. *Ford v. West,* 222 F.3d 767, 774 (10th Cir.2000) (quoting *McKnight v. Kimberly Clark Corp.,* 149 F.3d 1125, 1128 (10th Cir.1998)). In order to successfully resist summary judgment, there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a dispute of fact that is 'genuine'; an issue of material fact is genuine only if the nonmovant presents facts such that a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward,* 125 F.3d 1341, 1347 (10th Cir.1997).

### I. Plaintiff's Fed.R.Civ.P. 56(f) Motion

█ The general principle of Rule 56(f) is that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant's exclusive control of such information is a factor weighing heavily in favor of relief under Rule 56(f). *Price ex rel. Price v. Western Resources, Inc.* 232 F.3d 779, 783 (10th Cir.2000). Rule 56(f) does not operate automatically. Its protections must be invoked and can be applied only if a party satisfies certain requirements. *Id.* The requirements of Rule 56(f) have been summarized as follows: A prerequisite to granting relief [pursuant to Rule 56(f)] ... is an affidavit furnished by the nonmovant. Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been

taken to obtain these facts. In the Tenth Circuit, the nonmovant also must explain how additional time will enable him to rebut the movant's allegations of no genuine issue of fact. *Id.* While the movant's exclusive control of desired information is a factor favoring relief under Rule 56(f), it is not sufficient on its own to justify that relief, especially where the other requirements of Rule 56(f) have not been met. *Id.*

In the present case, Plaintiff states that Defendants have prematurely filed for summary judgment and requests that the Court not take action on the Defendants' motions until discovery is complete. In support of this proposition, Plaintiff's counsel filed an affidavit and memorandum which set out three basic areas for which she believes additional time for discovery is required: "1) with regard to whether we dispute the evidence that the film was established as of May, 1999; 2) with regard to whether discovery is needed in order to prove substantial similarity between Plaintiff's poem and Defendants' movie; and 3) with regard to Chronicle Books and Pixar connections." *See* Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Summ. J. Mot. Until After Disc. is Complete, or in the Alternative, to Continue the Hr'g on Mot. Until After Disc. is Complete, pp. 2–7. However, as fully explained below, the Court will assume without deciding that Defendants had access to Plaintiff's poem, and that Plaintiff could show some evidence of actual copying[1], meaning that this case turns on whether there is a substantial similarity between the protectable aspects of Plaintiff's poem and Defendants' works. With this assumption, and following the abstraction-filtration-comparison test as set out below,

the Court finds that further discovery is superfluous and merely a waste of time for all parties involved.

As to the first area which Plaintiff states requires additional discovery, namely, whether the film was completely established as of May, 1999—even direct evidence that the movie was not developed until after Plaintiff submitted her poem to Chronicle only goes to disprove independent creation. *See Gates Rubber Co. v. Bando Chemical Industries, Limited,* 9 F.3d 823, 833, fn. 8 (10th Cir.1993). Defendants may utilize evidence of independent creation to rebut the inference of copying. Where the Court assumes that some type of copying took place, such dispute disappears. Assuming that Pixar and Disney had some access to Plaintiff's poem negates the need for further discovery on Plaintiff's third point of contention regarding a connection between Pixar/Disney and Chronicle. Therefore, all that remains is Plaintiff's second point regarding substantial similarity between Plaintiff's poem and *Monsters, Inc.* Further discovery is also unnecessary on this point, as further set out below, as the Court may perform the abstraction-filtration-comparison test merely by looking to the works themselves.

Plaintiff argues that "in complex areas of copyright protection, it is far preferable to draw upon a large arsenal of facts to design and divine the legally significant facts. Once those are gathered and expert testimony is heard, then the court can analyze which portions of the work infringes on the protected expression. Without discovery, this 'arsenal' cannot be gathered. In sum, any issues over originality are better suited to a summary

---

1. The Court's decision to make these assumptions in no way should be construed as an indication that it believes that they could actually be shown. In fact, Plaintiff's "proof" is merely suppositions and conjecture. The Court makes these assumptions in order to facilitate its decision on the motions for summary judgment.

judgment motion after the completion of relevant discovery. This must be especially true in the context of literature and movies (rather than a cut-and-dried computer program and its algorithms)." *See* Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Summ. J. Mot. Until After Disc. is Complete, or in the Alternative, to Continue the Hr'g on Mot. Until After Disc. is Complete, pp. 9–10 (citations omitted).

Actually, Plaintiff's assertion is exactly the opposite of common sense. It is true that copyright is a complex area of law. However, unlike technical computer programs and the like that are copyright protected, the Court does not require further discovery to compare two literary works that are expressed in plain English.[2] Further discovery, or a "larger arsenal of facts" would not change what each work *is* on its face. If the Court assumes that Defendants had access to Plaintiff's work, and even further, assumes that Defendants somehow copied Plaintiff's work, further discovery is also unnecessary as to the independent creation issue. No copyright action can be successful without a showing of substantial similarity, which is completely lacking in this case.[3]

Plaintiff also argues that further discovery is required as to the timing and development of the movie's storyline and the impressions that defendants have of their own work. *See* Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Summ. J. Mot. Until After Disc. is Complete, or in the Alter-native, to Continue the Hr'g on Mot. Until After Disc. is Complete, p. 12. Again, in the form that they were presented to the public, Plaintiff's poem and Monsters, Inc. are not substantially similar. Since "a court considers the works as they were presented to the public," discovery in this case relating to the steps of creation involved in Monsters, Inc. would be pointless. *See Walker v. Time Life Films, Inc.*, 615 F.Supp. 430, 434 (D.C.N.Y.1985) (denying plaintiff's request that the court compare two works on the basis of lists of random similarities and on earlier scripts of the screenplay); *Davis v. United Artists, Inc.*, 547 F.Supp. 722, 724 (S.D.N.Y. 1982). Courts have routinely rejected requests to consider earlier drafts of a screenplay. *Walker*, 615 F.Supp. at 434. Consideration of earlier versions of the screenplay is too unreliable in determining substantial similarity. *Huie v. National Broadcasting Company*, 184 F.Supp. 198, 199 (S.D.N.Y.1960); *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir.1984), *cert. denied*, 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985) (rejection of list method of comparing works for substantial similarity, because it is "inherently subjective and unreliable.").

In her response to Defendants' summary judgment motions, Plaintiff mentions the concepts of "intermediate copying" and "derivative works" as additional reasons why more discovery is necessary. With regard to the derivative works con-

---

2. *See Gates Rubber Co. v. Bando Chemical Industries, Limited*, 9 F.3d 823, 831 (10th Cir.1993), which, when analyzing a computer program, states that it is "far preferable . . . in an area of legal *and technological* sophistication as complex *as this area* of copyright protection, to draw upon a larger arsenal of facts in order to design or derive the appropriate legally significant facts. Once these are gathered and expert testimony is heard, the court can then analyze which portions of the program, according to the expert testimo-ny, infringes the protected expression." (emphasis added).

3. "Substantial similarity" will be fully discussed *infra*, II. B. *See generally, Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir.1996); *Autoskill v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1490 (10th Cir.1993), *cert. denied*, 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993).

cept, Plaintiff states that "While the undersigned has not found case law interpreting this point, it would make sense that where, as here, Plaintiff alleges that her story/poem was 'recast' to become part of a movie, the background of the development of that movie becomes significant. Bluntly put, a line-by-line comparison does not do justice to this circumstance because there is no line-by-line comparison to make. Instead, the similarities must be gleaned from the circumstantial evidence surrounding the case—which requires time for discovery ...." *See* Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Summ. J. Mot. Until After Disc. is Complete, or in the Alternative, to Continue the Hr'g on Mot. Until After Disc. is Complete, p. 13. A derivative work is defined as:

> ... a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work". 17 U.S.C. § 101.

As explained in-depth below, the Court does not need circumstantial evidence to compare two works which are plainly expressed in English. Either similarities exist, or they do not. If Defendants' works are derivative works fashioned on Plaintiff's poem, which seems unreasonable, then they have been changed to such an extent as to fail the substantial similarity test required for a copyright infringement claim to succeed in the Tenth Circuit. *See generally, Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir.1996); *Autoskill v. National Educational Support Systems, Inc.,* 994 F.2d 1476, 1490 (10th Cir.1993), *cert. denied,* 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993).

In her argument requesting a derivative work analysis, quoted above, the Plaintiff basically admits that no similarities are readily apparent between her poem and Monsters, Inc. The Court certainly agrees. Plaintiff cannot bypass the requirement of copyright law that two works have substantial similarities by speculating that somehow, Plaintiff's work has been recast, and so Plaintiff may rely on a concept which she does not explain or cite case law in support of. If Plaintiff's work has been recast, the recasting has made Plaintiff's work unrecognizable to the ordinary observer. "Copying deleted or so disguised as to be unrecognizable is not copying." *See v. Durang,* 711 F.2d 141, 142 (9th Cir.1983).[4]

As to the intermediate copying concept, Plaintiff states that the concept is used in relation to computer program copyright cases, but that "it is quite possible that this Circuit would ultimately use the 'intermediate copying' test for purposes of liter-

---

**4.** *See also Alcatel USA, Inc. v. DGI Technologies, Inc.,* 166 F.3d 772, 787, fn. 55 (5th Cir.1999) ("infringing work [derivative work] must incorporate a sufficient portion of the pre-existing work ...." 2 Nimmer, § 8.09[A], at 8–128. To be actionable, the finished product must be 'substantially similar' to its forbear. *Id.*"); *Micro Consulting, Inc. v. Zubeldia,* 813 F.Supp. 1514, 1531 (W.D.Okla. 1990)("like any other accused work, a derivative work does not infringe unless it has been substantially copied from the preexisting work .... Thus, substantial similarity is again the key to finding a [copyright] violation ...."), citing *Vault Corp. v. Quaid Software Ltd.,* 847 F.2d 255, 267 (5th Cir.1988) (to be considered a derivative work, infringing work must incorporate portion of and be substantially similar to copyrighted work); *Litchfield v. Spielberg,* 736 F.2d 1352, 1357 (9th Cir. 1984).

ary and movie works" since the Tenth Circuit adopted the abstraction-filtration-comparison test from computer program copyright cases. *See* Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Summ. J. Mot. Until After Disc. is Complete, or in the Alternative, to Continue the Hr'g on Mot. Until After Disc. is Complete, pp. 13–14. Indeed, other circuits have considered intermediate copying concepts in relation to literary works. *See Sega Enterprises Ltd. v. Accolade, Inc.,* 977 F.2d 1510 (9th Cir.1993)(listing cases discussing the concept in relation to copying of books, scripts and literary characters: *See v. Durang,* 711 F.2d 141 (9th Cir.1983); *Warner Bros. v. ABC,* 654 F.2d 204 (2d Cir.1981); *Miller v. Universal City Studios, Inc.,* 650 F.2d 1365 (5th Cir.1981); *Walker v. Time Life Films, Inc.,* 615 F.Supp. 430 (S.D.N.Y. 1985), *aff'd,* 784 F.2d 44 (2d Cir.1986), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986); *Davis v. United Artists, Inc.,* 547 F.Supp. 722 (S.D.N.Y.1982); *Fuld v. NBC,* 390 F.Supp. 877 (S.D.N.Y. 1975); *Cain v. Universal Pictures Co.,* 47 F.Supp. 1013 (S.D.Cal.1942)). However, the concept of intermediate copying is generally applied to computer programs due to the unique, technologically complex makeup of computer code. Tiny bits of computer code being copied into the completed computer program in order to facilitate various functions is a significantly different concept than the comparison of a poem to a movie.

While the Court does not reject the possibility of intermediate copying in relation to literary works, Plaintiff's intended meaning is incomprehensible in this case. Plaintiff cites only to cases involving computer programs. *See* Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Summ. J. Mot. Until After Disc. is Complete, or in the Alternative, to Continue the Hr'g on Mot. Until After Disc. is Complete, p. 14. The intermediate copying concept cannot result in copyright infringement without the basic component of substantial similarity. In the computer program cases, bits of code can be found within the programs. This is copying. In the present case, nothing original or copyrightable of Plaintiff's can be found to be substantially similar to Defendants' works. The Court rejects Plaintiff's attempt to sidestep the requirement in copyright infringement law of substantial similarity by reliance on the concepts of intermediate copying and derivative works, when actually these concepts still maintain the substantial similarity concepts.

Defendants have argued that Plaintiff is attempting to engage in an expensive fishing expedition under the guise of further discovery, as Plaintiff has failed to state what facts beyond mere speculation that she intends to discover. In light of the above finding that further discovery is unnecessary, the Court need not enter into this discussion, though it seems that Defendants' argument has merit. *See Diaz v. Paul J. Kennedy Law Firm,* 289 F.3d 671, 673 (10th Cir.2002)(finding no abuse of discretion where district court stayed discovery in the face of 56(f) motion where Plaintiffs did not inform the district court, with any specificity, how additional information would have helped them oppose defendants' motion for summary judgment). For the reasons stated above, and as further explained below, Plaintiff's Fed. R.Civ.P. 56(f) motion is **DENIED**.

## II. Copyright Infringement

■ A copyright infringement claim requires that a Plaintiff establish both: (1) that she possesses a valid copyright; and (2) copying by defendants of protected components of the copyrighted material. *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1284 (10th Cir.1996), citing *Feist Publications, Inc. v. Rural Telephone Service Co.,* 499 U.S. 340, 361, 111

S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Gates Rubber Co. v. Bando Chemical Industries, Limited,* 9 F.3d 823, 831 (10th Cir.1993); *Autoskill v. National Educational Support Systems, Inc.,* 994 F.2d 1476, 1487 (10th Cir.1993), *cert. denied,* 510 U.S. 916, 114 S.Ct. 307, 126 L.Ed.2d 254 (1993). A Certificate of Registration, if timely obtained, constitutes prima facie evidence of the validity of the copyright. 17 U.S.C. § 410(c); *Autoskill,* 994 F.2d at 1487. Once the presumption (pursuant to 17 U.S.C. § 410(c)) that a copyright is valid is established, the defendant has the burden of overcoming it. *Autoskill,* 994 F.2d at 1487. As part of their opposition to Plaintiff's Motion for Preliminary Injunction, Defendants claimed that this Court lacked jurisdiction as Plaintiff had failed to register her copyright. Plaintiff produced papers to the Court on the day of the hearing on the Preliminary Injunction showing that she had applied for a copyright on her poem, and this Court subsequently found that it did have jurisdiction. *See* Order, November 23, 2001, 01–CV–185–B, pp. 4–6. Defendants do not challenge Plaintiff's valid copyright of her poem at this juncture of the case, and therefore, the Court will assume that it is valid so that the first prong of the above test is satisfied. Thus, this case turns on the second prong of the test, namely, whether Plaintiff can show that Defendants copied protectable elements of her poem.

■■ The second prong of the test involves two separate inquiries: 1) whether the defendant, as a factual matter, copied portions of the plaintiff's poem;[5] and 2)

whether, as a mixed issue of fact and law, those elements of the poem that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable. 3 Melville B. Nimmer, Nimmer on Copyright § 13.01[B], at 13–8 to 13–15 (1993) (hereinafter "Nimmer"); *Gates Rubber,* 9 F.3d at 832. Ultimately, to prove factual copying, the plaintiff must come forward with sufficient evidence that a reasonable factfinder, taking together the evidence of access and the similarities between the works, could find that the second work was copied from the first. *Id.* at 833.

## A. Copying

A plaintiff can establish that the defendant copied her poem either through the presentation of direct evidence or through indirect evidence. *Country Kids,* 77 F.3d at 1284. Due to the fact that direct proof of copying is rare, *Whelan,* 797 F.2d at 1231; *Roth Greeting Cards v. United Card Co.,* 429 F.2d 1106, 1110 (9th Cir.1970), plaintiffs typically rely on the indirect method of proof. *Gates Rubber,* 9 F.3d at 833.

■ In the case at bar, Plaintiff alleges that Defendants Disney and Pixar had access to her poem through their connection with Defendant Chronicle. Plaintiff hypothesizes that someone at Chronicle reviewed Plaintiff's poem, revealed it to someone at Pixar/Disney, and then Pixar/Disney incorporated the poem into the movie Monsters, Inc. Plaintiff has failed to show any direct evidence of such occur-

---

**5.** Copying is used herein as a shorthand reference to any infringement of the copyright holder's exclusive rights that are set forth at 17 U.S.C. § 106. *Ford Motor Co. v. Summit Motor Products, Inc.,* 930 F.2d 277, 291 (3d Cir.1991), *cert. denied* 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). 17 U.S.C. § 106 establishes: Subject to sections 107 through 120, the owner of copyright under

this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies ...; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies ... of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending .... 17 U.S.C. § 106 (1977 and Supp.1993).

**1238**

rence. Therefore, Plaintiff must rely on the indirect method to show copying. Reliance on the indirect method of proving copying merely creates an inference that the defendant appropriated portions of the plaintiff's work. *Gates Rubber*, 9 F.3d at 833, fn. 8. A defendant may utilize evidence of independent creation to rebut the inference of copying created by the evidence of access and factual similarity. *Id.* at 833. The indirect method to prove copying must show: 1) that the defendant had access [6] to the copyrighted material; and 2) that there are probative similarities between the copyrighted material and the allegedly copied material. *Country Kids*, 77 F.3d at 1284; *Autoskill*, 994 F.2d at 1489; *Atari Games Corp. v. Nintendo of America Inc.*, 975 F.2d 832, 837–38 (Fed. Cir.1992); *Whelan Associates v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1222, 1231–32 (3d Cir.1986), *cert. denied*, 479 U.S. 1031, 107 S.Ct. 877, 93 L.Ed.2d 831 (1987); 3 Nimmer § 13.01[B], at 10–12.

██ In examining the similarities between two works under the indirect method of proving copying, it is ordinarily important to compare the whole works. *Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 618 (7th Cir.1982), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). The degree of similarity between works which is necessary to give rise to the inference that copying occurred varies from case to case. *Gates Rubber*, 9 F.3d at 833, fn. 9, citing *Arnstein v. Porter*, 154 F.2d 464, 469 (2d Cir.1946). A high degree of similarity may permit access to be in-

ferred. *Gates Rubber*, 9 F.3d at 833, fn. 9; *Ferguson v. National Broadcasting Co.*, 584 F.2d 111, 113 (5th Cir.1978); 3 Nimmer § 13.02[B], at 13–21. Where there is strong proof of access, the necessary showing of factual similarity will be relatively lower. *Gates Rubber*, 9 F.3d at 833, fn. 9. Regardless of how conclusive proof of access may be, liability may not attach without some showing of similarity. *Id.*

██ Assuming without deciding, for the purposes of this order, that Plaintiff would be able to show some proof of access to her poem by Pixar/Disney through Chronicle [7], Plaintiff does not survive Defendants' Motions for Summary Judgment as she cannot satisfy the second portion of the indirect copying inquiry. Even where actual copying is proven, liability for copyright infringement can only attach where protected elements of a copyrighted work are copied. *Country Kids*, 77 F.3d at 1284. "Unprotectable elements of a program, even if copied verbatim, cannot serve as the basis for ultimate liability for copyright infringement." *Gates Rubber*, 9 F.3d at 833, citing *Baker v. Selden*, 101 U.S. 99, 101–03, 25 L.Ed. 841 (1879). "The mere fact that a work is copyrighted does not mean that every element of the work may be protected." *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 348, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). A court is consequently required to find substantial similarity between those aspects of Plaintiff's work which are legally protectable and the Defendants' works. *Country Kids*, 77 F.3d

6. Access is merely the reasonable opportunity to view or copy the allegedly infringed work. *Autoskill*, 994 F.2d at 1490.

7. Plaintiff makes vague allegations that individuals who work for one Defendant may know individuals that work for the other Defendant, prior to the time that Defendants have alleged that their official business rela-

tionship with regard to Monsters Inc. began. *See* Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Summ. J. Mot. Until After Disc. is Complete, or in the Alternative, to Continue the Hr'g on Mot. Until After Disc. is Complete, p. 6. Plaintiff further asserts that Defendants have "at least some connection due to the fact that they both have a relationship with George Lucas and Lucasfilm." *Id.*

at 1284; *Autoskill,* 994 F.2d at 1490. Therefore, assuming without deciding, that Plaintiff could show some evidence of actual copying, this case turns on whether there is a substantial similarity between the protectable aspects of Plaintiff's poem and Defendants' works. The Court finds that this similarity does not exist.

## B. Substantial Similarity

 To make a determination of whether Defendants' work is substantially similar to the protected elements of Plaintiff's work, the Tenth Circuit applies an "abstraction—filtration—comparison" test, requiring that the Court:

> 1) separate the ideas (and basic utilitarian functions), which are not protectable, from the particular expression of the work; 2) filter out the nonprotectable components of the product from the original expression; and 3) compare the remaining protected elements to the allegedly copied work to determine if the two works are substantially similar. *Gates Rubber,* 9 F.3d at 834–42.

 In determining whether two works are substantially similar, the court inquires "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Country Kids,* 77 F.3d at 1288.

### 1. Abstraction and Filtration

 The first step in determining the substantial similarity issue is to separate the unprotectable ideas from the particular expression of the work, and then filter out the nonprotectable components of the product from the original expression. As an initial matter, it is essential to note that the gravamen of copyright law is that only the expression of an idea, not the idea itself is subject to protection. *Autoskill,*

994 F.2d at 1491. The Copyright Act states that copyright protection does not extend to "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). A Court may find noninfringement as a matter of law where the similarity between the works concerns only non-copyrightable elements of the plaintiff's work or no reasonable jury could find the two works to be substantially similar. *Fisher v. United Feature Syndicate, Inc.,* 37 F.Supp.2d 1213, 1218 (D.Colo. 1999), *aff'd* 203 F.3d 834, 2000 WL 135167 (10th Cir.2000), *cert. denied* 531 U.S. 992, 121 S.Ct. 483, 148 L.Ed.2d 456 (2000); *Warner Bros. Inc. v. American Broadcasting Companies,* 720 F.2d 231, 240 (2d Cir. 1983).

 In differentiating between an idea and a specific form of expression, it is important to remember that copyright law seeks to balance competition based on public ideas and incentive to produce original works. *Country Kids,* 77 F.3d at 1285. *See Sony Corporation of America v. Universal City Studios, Inc.,* 464 U.S. 417, 429, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) (explaining that copyright law seeks to achieve a balance between "the interests of authors ... in the control and exploitation of their writings ... on the one hand, and society's competing interests in the free flow of ideas [and] information ... on the other hand."); *Meade v. United States,* 27 Fed.Cl. 367, 372 (1992) ("[I]n defining protectable expression, the court should 'neither draw the line so narrowly that authors, composers and artists will have no incentive to produce original literary, musical and artistic works, nor [should the court] draw it so broadly that future authors, composers and artists will find a diminished store of ideas on which to build their works.'") (quoting Paul Goldstein,

Copyright: Principles, Law, and Practice § 2.3.1.2 (1989)); *aff'd,* 5 F.3d 1503, 1993 WL 272466 (Fed.Cir.1993). Hence, to the extent that the idea and the particular expression cannot be separated, the work cannot be protected by a copyright because "protecting the 'expression' in such circumstances would confer a monopoly of the 'idea' upon the copyright owner." *Country Kids,* 77 F.3d at 1285; *Herbert Rosenthal Jewelry Corp. v. Kalpakian,* 446 F.2d 738, 742 (9th Cir.1971); *Atari, Inc. v, North American Philips Consumer Electronics Corp.,* 672 F.2d 607, 616 (7th Cir. 1982) *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). "[W]here the protected work and the accused work express the same idea, the similarity that inevitably stems solely from the commonality of the subject matter is not proof of unlawful copying." *Country Kids,* 77 F.3d at 1285, citing *Durham Industries, Inc. v. Tomy Corp.,* 630 F.2d 905, 913 (2d Cir. 1980). Thus, "[s]eparating idea from expression, then, is one of the basic parts of a substantial similarity analysis." *Autoskill,* 994 F.2d at 1491.

In her complaint, Plaintiff points out the similarities between her poem and the movie as follows:

¶ 3.9 "There's A Boy in My Closet"—1) A monster is surprised at nighttime when he finds a boy in his bedroom closet; the monster is afraid. 2) The monster that finds the boy is described as big, fat, and furry with horns on his head. 3) The boy is described as little, bony and thin (i.e. not big and fat like the monster). 4) The tone and pace is a combination of fear by the monster and amusement by the reader, with part of the amusement being the disparity in sizes between the monster and the child; there is an assumption by the reader that the monster mistakenly believes that children are dangerous to monsters. Monsters, Inc. Movie Scene—1) By mistake and at nighttime, a monster lets a girl into "monsterland" through a closet door; the monster is afraid. 2) The monster. that finds the girl is big, fat, and furry with horns on his head. 3) The girl is little and thin. 4) The tone and pace is the same as described previously.

¶ 3.10 In sum, there is a total concept of feel, and a similarity of expression, between "Boy in My Closet" and this portion of Monsters Inc. that shows substantial similarity between the two.

*See* Complaint ¶¶ 3.9, 3.10.

In her response to Defendants' Motions for Summary Judgment, Plaintiff states: "It is important to recall why this lawsuit was initiated in the first place. There was a snapshot of a moment from the movie in one of the three trailers advertising its impending arrival in movie theaters. As it turns out, this trailer accurately portrayed what occurs in the movie—that is, a large, furry monster opens a closet door through which a child walks, looks up at him, and says 'duckit' as a greeting. By its one-word greeting, the child is friendly and open to the monster. The monster, in response, cowers in fear. This snapshot of this scene—its expression, these characters, and their unique interaction told through the simplicity of the moment— is the epitome of the scene created by Ms. Madrid's short story. It is a scene that sets the tone and approach for the rest of the movie and for the development of the characters (including a 'mother-like' character—in Mike—at another point). It is a scene that the defendants valued so much that they made it a key component to one of only three movie trailers that they designed for the promotion of the movie . . . . It is a beautiful, creative scene that sets a tone. Without this scene and its tone, Monsters Inc. would be a significantly different movie."

*See* Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Summ. J. Mot. Until After Disc. is Complete, or in the Alternative, to Continue the Hr'g on Mot. Until After Disc. is Complete, pp. 11–12. This is the heart and soul of Plaintiff's case.

Basically, the similarities that Plaintiff mentions in her complaint and response—a big, fat, furry monster with horns on its head, a small thin child, monsters in children's bedroom closets and vice versa at night, a mother-child relationship—are merely ideas, and not the expression of ideas, and therefore, not subject to copyright protection. The feel, essence and reaction by the reader that Plaintiff mentions are likewise unprotectable under copyright law, as they are merely amorphous concepts and do not meet the requirements of 17 U.S.C. § 102(a), which states: "Copyright protection subsists, in accordance with this title, in original works of authorship *fixed in any tangible medium of expression.*" (emphasis added). Feelings and reactions are not fixed, and can vary in accordance with many factors, none of which relate to the Plaintiff's copyrighted work—which, it is essential to remember—consists only of the poem *in its entirety.* It seems that Plaintiff would have the Court believe that every element of the poem is protected, but this is not the case.

■■■■■ "Copyright protection subsists, in accordance with this title, in original works of authorship . . . ." 17 U.S.C. § 102(a). "[C]opyright does not prevent subsequent users from copying from a prior author's work those constituent elements that are not original—for example . . . facts, or materials in the public domain . . . ." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 350, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991), citing *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 547–48, 105 S.Ct. 2218, 85 L.Ed.2d 588

(1985). "It is axiomatic that material in the public domain is not protected by copyright, even when incorporated into a copyrighted work." *Autoskill*, 994 F.2d at 1494, citing 3 Nimmer § 13.03[F][4], at 13–98. As Plaintiff herself admits, the elements of her poem as she describes them—a big, fat, furry monster with horns on its head, a small, thin child, monsters in children's bedroom closets and vice versa at night, monsters who are afraid of children—are not original, as they appear in many children's stories and are generally known in the public sphere. *See* Preliminary Injunction Transcripts, pp. 86—100. Such things are even written about in other books which pre-date Plaintiff's poem, such as *Where the Wild Things Are* by Maurice Sendak (Copyright 1963), *No Such Thing* by Jackie French Koller (published in 1997), *Papa* (published 1996), and *The Monster Bed* (published 1986). *See Id.;* Defs. Pixar and Disney's Mem. in Supp. of Mot. for Summ. J., p. 15. Generalized themes and ideas lie in the public domain and are not copyrightable. *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir.1936), *cert. denied,* 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936). Similarly, although tone and pace can be original expressions and subject to copyright protection, Plaintiff's claims of infringement on this basis must also fail. To the extent that Plaintiff's poem even contains "tone" or "pace"—for example, the excitement, innocence, or the simplicity of a moment—these elements are certainly not original, but are common to many pieces of children's literary works.

At the summary judgment hearing and in her response to the motions for summary judgment, Plaintiff makes much of the mother-child relationship that may or may not exist in the movie, in the form in which it was presented to the public, between the main character Sully, and his friend, Mike. Even if Defendants somehow came up with the idea of adding a mother-

child relationship to their movie from Plaintiff's poem, which the Court need not definitively decide, this idea, as an idea, is not copyrightable as the concept of a mother-child relationship is readily available in the public domain and is certainly not original. Any suggestion that Plaintiff could copyright the mother-child concept is absurd.

In addition to lacking originality and containing ideas which are part of the public domain, Plaintiff's poem fails the abstraction filtration part of the Tenth Circuit's substantial similarity test on the basis of the "scenes a faire" doctrine. The "scenes a faire" doctrine, in general, excludes from copyright protection material that is "standard," "stock," or "common" to a particular topic, or that "necessarily follow[s] from a common theme or setting." *Autoskill*, 994 F.2d at 1494, citing 3 Nimmer § 13.03[B][4], at 13–70. The "scenes a faire" approach examines "incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic [to determine which] stock literary devices are not protectable by copyright." *Country Kids*, 77 F.3d at 1286, n. 7, citing *Atari, Inc. v, North American Philips Consumer Electronics Corp.*, 672 F.2d 607, 616 (7th Cir.1982) *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). This approach applies directly to the gravamen of Plaintiff's claim—the "snapshot" moment that Plaintiff relies so heavily upon. This snapshot of a monster encountering a child in a closet is the most natural idea that flows from the idea of monsters and children—as children, many people may

have had nightmares of monsters in the closet and under the bed. The innocence of the child, the feeling of excitement or amusement by a person who observes the scene, the tone of the story—all of these ideas are standard and indispensable with these characters, and with children's stories in general. To say that such things may be protected by copyright laws would result in an absurd ruling, would certainly be chilling to the free flow of children's stories, and could mean that many a child's bad dream would be a copyright infringement.

### 2. Comparison

Upon completion of the abstraction and filtration portions of the Tenth Circuit's substantial similarity test, not much remains of Plaintiff's copyrighted poem. Basically, Plaintiff's poem in its copyrighted form of seven stanzas and twenty-eight lines remains, and Plaintiff does not attempt to say that this appears anywhere in Defendants' works. The thin, bony boy with freckles and hair from Plaintiff's poem does not appear in Defendants' works—the only similar character is the girl, Boo, an innocent child, who does not generally speak understandable English words and is chubby with baby-fat. The fat, furry monster with horns on its head appears in both works, but it also appears numerous other places in the public domain.[8] The idea of a mother consoling a child is an un-copyrightable idea, as is the concept of a mother/child relationship.[9]

A comparison of Plaintiff's poem and the scene that Plaintiff has asserted as

---

**8.** Additionally, Defendants have presented evidence of the prior independent creation of such a monster. *See* "The Art of Monsters Inc." As discussed previously, as the Court will assume for the purposes of this Order, without deciding, that access and even copying took place in some form, the issue of

independent creation need not be discussed at length.

**9.** By this statement, it should not be assumed that the Court has accepted Plaintiff's allegations that a mother/child type relationship exists between Sully and Mike in Monsters, Inc., at least in the movie's final form that

the heart and soul of her copyright case—one of three trailers used to promote the movie—reveals substantial differences. The poem portrays a scene where a child monster recounts seeing a human in his closet to his monster mother. The child monster says that the human· said "hi." The mother monster tells her child that there is no such thing as little boys and sends the child monster back to bed. In the trailer, an adult monster (Sully) is inspecting what appears to be a door with a door-frame and some unusual buttons and knobs in the warehouse-like building where he works. When Sully turns around, he unexpectedly encounters the chubby, pre-verbal girl (Boo). Boo says some incomprehensible word ("duckit") as a greeting, and Sully screams and falls over. Through watching the movie in its entirety, the audience learns that Sully is afraid because he thinks that children are poisonous and he has accidently allowed one into the monster world. Even this "snapshot" moment that Plaintiff relies on as the quintessential embodiment of her poem differs substantially from her poem. "[N]umerous differences tend to undercut substantial similarity." *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir.1980). While "(n)o plagiarist can excuse the wrong by showing how much of his work he did not pirate," *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir.1936), *cert. denied*, 298 U.S. 669, 56 S.Ct. 835, 80 L.Ed. 1392 (1936), "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's." 3 Nimmer, § 13.03(B) at 13–37. Thus, far from being irrelevant, in cases such as this· where the alleged copyright infringer "does not take out a block in situ," *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir.1930), an examination of the differences between two works may reveal the absence of substantial similarity. *See Reyher v. Children's Television Workshop*, 533 F.2d 87, 93 (2d Cir.1976) (court affirmed district court's finding that two scenes had "such substantial differences as not to warrant a finding of infringement"); *Nichols*, 45 F.2d at 120 (court held that "defendant's play [was] too unlike the plaintiff's to be an infringement"); *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021, 1023 (2d Cir.1966) (court emphasized "distinct differences" with respect to features of dolls in finding no infringement). In the present case, after considering all of the differences together with the similarities, when viewing the works as a whole, and when viewing them element by element, the Court finds that Plaintiff's poem and Defendants' works are not substantially similar and therefore do not support Plaintiff's copyright infringement claims.

Thus, for all of the aforementioned reasons, the Court finds that any similarity that may exist between Plaintiff's poem and Defendants' works is merely a similarity of ideas, and not a similarity in the expression of those ideas.[10] While the Plaintiff's and Defendants' works share

---

was shown to the public. The Court resists Plaintiff's invitation to delve into the psyches of two fictional monster characters to find a similarity which is not readily apparent. Whether or not Defendants used this concept is irrelevant, as it is far outside the realm of copyrightable expression of an idea.

**10.** Indeed, many courts have denied copyright infringement liability in cases involving far more distinctive and original elements than those involved in Plaintiff's case. *See Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir.1996)(a dinosaur zoo); *Robinson v. Viacom International, Inc.*, 1995 WL 417076 (S.D.N.Y.1995)(a 1950's era sitcom family interacts with a contemporary family); *Arden v. Columbia Pictures Industries, Inc.*, 908 F.Supp. 1248 (S.D.N.Y.1995)(story of man trapped in a repeating day); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 460 (11th

common ideas, themes, and general imagery, the similarities are not sufficiently particular and concrete so as to represent an appropriation of the protected expression of Plaintiff's work. *See Warner Bros. Inc. v. American Broadcasting Companies, Inc.,* 654 F.2d 204, 209 (2d Cir.1981). The further gathering of evidence would not change what appears in each work as it was presented to the public. The Court is quite capable of comparing the two primary works and finds that no genuine issues of material fact exist as to the substantial similarity of the works. Therefore, Defendants' Motions for Summary Judgment are **GRANTED**. As the Court, after applying the Tenth Circuit abstraction-filtration-comparison test, finds that there is no substantial similarity between the movie Monsters, Inc. and Plaintiff's poem, copyright infringement has not taken place with regard to the movie or with regard to Defendant Chronicle's book, "The Art of Monsters, Inc." The book is merely a behind-the-scenes look at the movie and as such, the book is even less capable of infringement. The book does not contain either a plot or a story, and is based solely upon the movie. Therefore,

only a far-removed similarity of ideas exists between the book and Plaintiff's poem. Plaintiff stated at the summary judgment hearing as well as in her memorandum that the primary basis for her suit against Defendant Chronicle was the conspiracy theory that Chronicle conveyed her poem to Defendants Pixar and Disney.[11] As the Court has found that substantial similarity has not been shown, it logically follows that there can be no conspiracy to commit copyright infringement.

### III. Lanham Act Claim

Plaintiff asserts her Fourth Claim for relief based on the allegation that Defendants have asserted that Monsters, Inc. is an original creation of Pixar and staff and ignored the fact that Plaintiff's poem is the basis for part of the movie, and therefore, Defendants have made and will continue to make a false and misleading designation about the origin of the movie in violation of the Lanham Act, 15 U.S.C. §§ 1117 and 1125(a). As § 1117 of the Act is a damages section, it will not be discussed. The Lanham Act reads in relevant part:

> Any person who, on or in connection with any goods or services, or any con-

Cir.1994)(a wealthy foreign prince coming to America in search of a wife who rejects an arranged marriage and meets another woman that he marries); *Kouf v. Walt Disney Pictures & Television,* 16 F.3d 1042 (9th Cir.1994)(boy genius who invented formula for shrinking people); *Denker v. Uhry,* 820 F.Supp. 722, 730 (S.D.N.Y.1992)(an elderly, white Jewish person who, in the face of advancing age and the resultant loss of independence, requires the assistance of a black assistant and after initial resistance, develops a friendship with the assistant); *Walker v. Time Life Films, Inc.,* 784 F.2d 44 (2d Cir.1986)(policeman battling the hostile and morally decrepit environment of the 41st precinct of the Bronx); *Berkic v. Crichton,* 761 F.2d 1289, 1293 (9th Cir. 1985)(a young professional who investigates and exposes a criminal organization that murders healthy young people and removes and sells their vital organs to wealthy people in

need of transplants); *Reyher v. Children's Television Workshop,* 533 F.2d 87, 90 (2d Cir. 1976)(a lost child describes his mother to strangers as the most beautiful woman in the world, but when the child finds his mother, she is not beautiful to others as expected); *Nichols v. Universal Pictures Corp.,* 45 F.2d 119 (2d Cir.1930)(conflicts within Jewish and Irish families involving the marriages of their children which cross religious lines).

11. "Defendant Chronicle Books is a defendant in large part because of the theory of conspiracy—that it shared information with Pixar and/or Disney and reaped the profits for that sharing." *See* Pl.'s Mem. in Supp. of Mot. to Dismiss Defs.' Summ. J. Mot. Until After Disc. is Complete, or in the Alternative, to Continue the Hr'g on Mot. Until After Disc. is Complete, p. 16.

tainer for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "There are two distinct bases for liability under section 1125: 1) false representation in advertising concerning the qualities of goods (false advertising claims); and 2) false representations concerning the origin or endorsement of goods (false association or product infringement claims)." *Hutchinson v. Pfeil,* 211 F.3d 515, 520 (10th Cir.2000), citing *Stanfield v. Osborne Industries, Inc.,* 52 F.3d 867, 873 (10th Cir.1995). Plaintiff appears to be asserting a claim pursuant to the second possible basis for liability under 15 U.S.C. § 1125(a).

 The Lanham Act generally relates to trade marks, and none of the parties have cited any Tenth Circuit precedent applying the Lanham Act to a situation similar to the one at bar. However, the Lanham Act has been applied to situa-

tions such as this in other circuits. "In the context of written works, the Lanham Act may be used to prevent the misappropriation of credit properly belonging to the original creator of the work." *Waldman Publishing Corp. v. Landoll, Inc.,* 43 F.3d 775, 780–81 (2d Cir.1994), citing 2 Nimmer on Copyright § 8.21[E] (an author may claim violation of section 43(a) [1125(a) ] if his work is published without his name). The Court finds that Defendants are entitled to summary judgment on Plaintiff's Lanham Act claim based upon essentially the identical reasons as those stated above in connection with Plaintiff's copyright infringement claims. The Second Circuit has found, in a case somewhat similar to the one at bar, that the substantial similarity test is appropriate for determining false designation of origin under the Lanham Act. *Waldman Publishing,* 43 F.3d at 783. "A second work can be said to have the same origin as a first if the second was copied from the first. When the two works are identical, copying can almost always be assumed. When the works are somewhat different, copying can be established as it is in copyright infringement." *Id.* In the case at bar, the Plaintiff has not claimed that Monsters, Inc. is identical to her poem. Therefore, the substantial similarity test may be applied, and as explained fully above, the Plaintiff's poem and the movie Monsters, Inc. are not substantially similar, as any similarity is due to a similarity of ideas which are not original and are readily available in the public domain.[12] As no genuine issues of materi-

---

**12.** Plaintiff has presented affidavits to the effect that people thought of Plaintiff's work when they viewed the commercials for Monsters, Inc., which could impliedly support a claim under the Lanham Act as people were "confused." The Tenth Circuit has pointed out that the hallmark of a Lanham Act suit is proof of the likelihood of confusion, which occurs "when consumers make an incorrect mental association between the involved commercial products or their producers." *Card-*

*toons, L.C. v. Major League Baseball Players Association,* 95 F.3d 959, 966–67 (10th Cir. 1996), citing *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,* 483 U.S. 522, 564, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987), quoted with approval in *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.,* 828 F.2d 1482, 1484 (10th Cir.1987). In relation to a trade mark action, the Tenth Circuit considers the following factors relevant to a determination whether a likelihood of confusion exists:

al fact remain outstanding as to this case, Defendants' Motions for Summary Judgment regarding the Lanham Act are **GRANTED.**

### Conclusion

Therefore, for all of the aforementioned reasons, Defendants Chronicle, Disney and Pixar's Motions for Summary Judgment are **GRANTED** as to all of Plaintiff's claims. Plaintiff's claims are **HEREBY DISMISSED WITH PREJUDICE.** As the Court finds that further discovery is unnecessary to its decision on Defendants' Motions for Summary Judgment, Plaintiff's Fed.R.Civ.P. 56(f) Motion is **DENIED.** All other pending motions in this case are **HEREBY DISMISSED AS MOOT.**

a) the degree of similarity between the marks, including the marks' appearance, pronunciation, suggestion, and manner of display; b) strength or weakness of the plaintiff's mark; c) the intent of the alleged infringer in adopting its mark; d) similarities and differences of the parties' goods, services and marketing strategies; e) the degree of care likely to be exercised by purchasers of the goods or services involved; and f) evidence of actual confusion, if any. *Hutchinson v. Pfeil,* 211 F.3d 515, 520 (10th Cir.2000); *Universal Money Centers, Inc. v. American Telephone and Tele-* *graph Co.,* 22 F.3d 1527, 1530 (10th Cir.1994) (discussing factors). In every case, the key inquiry is whether the consumer is "likely to be deceived or confused by the similarity of the marks." *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 780, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Applied to two works, it could be said that a certain degree of similarity would be required. As stated previously, any similarity between Plaintiff's poem and the movie Monsters, Inc. is due to a similarity of ideas which are not original and are readily available in the public domain.